UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Perficient, Inc., | Civ. No. 24-2425 (PAM/DJM) |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| Thomas Craft, | |
| Defendant. | |

This matter is before the Court on Plaintiff Perficient Inc.'s Motion for a Preliminary Injunction.[1] (Docket No. 2.) After receiving briefing from Plaintiff Perficient Inc. and Defendant Thomas Craft, the Court held a hearing on the Motion on June 27, 2024. As stated at the hearing, and for the following reasons, the Court denies the Motion.

**BACKGROUND**

Perficient Inc. is an IT-consulting and software-development company that employed Thomas Craft for nearly 13 years. (Compl. (Docket No. 1) ¶ 20.) While working as Perficient's Managing Director in its Minneapolis office, Craft's responsibilities included managing sales relationships with customers in Minnesota and the surrounding area; as such, Craft had access to Perficient's confidential business information and trade secrets. (Id. ¶¶ 20-21, 23-31.)

---

[1] Perficient styles its Motion as one for a temporary restraining order or a preliminary injunction. As indicated at the hearing, because Craft had been notified of the Motion and had an opportunity to be heard, the Court will treat the Motion as one for a preliminary injunction. See Fed. R. Civ. P. 65(a)-(b).

During his employment with Perficient, Craft signed three agreements: a Confidentiality Agreement in 2011, and two Stock Awards, one in 2023 and another 2024. The three agreements contain materially the same restraints regarding non-solicitation and confidentiality. Each agreement dictates that Craft may not, for a period of 24 months after his employment with Perficient, "directly or indirectly: (a) solicit (or assist in soliciting) any Covered Client or Prospective Client for Competitive Products or Services, or (b) provide (or assist another in providing) Competitive Products or Services to any Covered Client or Prospective Client." (Id. ¶ 33; id. Ex. A at 3; see id. Ex. B ¶ 15(e), Ex. C ¶ 15(e).) Each agreement further includes obligations to hold Perficient's information and trade secrets in confidence and not to use or disclose that information. (Id. ¶ 34, 40, 44; id. Ex. A at 1-2, Ex. B ¶ 15(a), Ex. C ¶ 15(a).)

Craft resigned from Perficient in March 2024, due to "dissatis[faction] with the demands placed upon [him] and the effect work had on [his] family and [his] mental health," without a plan for his future employment. (Craft Decl. (Docket No. 15) ¶ 4.) Upon leaving Perficient, Craft did not take with him any confidential or client information or any trade secrets. (Id. ¶ 14.)

Subsequently, on May 23, 2024, Craft called a Vice President at Perficient to let him know that he had accepted a new position, but the call went unanswered. (Id. ¶ 5.) In June 2024, Craft began as the Client Growth Officer at Clientek, a company that Perficient claims is a competitor. (Compl. ¶ 4.) Clientek is a much smaller company than Perficient—Perficient employs more than 7,000 people around the world and its annual revenue exceeds $910 million, while Clientek employs 40 people and its annual

2

revenue is approximately $15 million. (Craft Decl. ¶ 8, 0.) Clientek focuses its business on building custom applications for businesses and does not offer many of the IT-consulting services offered by Perficient. (Id. ¶¶ 7, 9.) In March and June of 2024, Perficient sent letters reminding Craft of his ongoing contractual obligations to Perficient. (Compl. ¶ 58, 65-66.)

On June 12, 2024, Craft met Jason Hopkins, a professional acquaintance whom Craft has known for years, for lunch. (Id. ¶ 69; Craft Decl. ¶ 6.) Hopkins works for a company called BeiGene. (Compl. ¶ 69.) Craft recalls that Perficient was trying to prospect work "to provide . . . software support" to BeiGene in the fall of 2023, but BeiGene was "non-committal." (Craft Decl. ¶¶ 3, 7.) When Craft resigned from Perficient, he believed that BeiGene was not a customer of Perficient and that BeiGene was uninterested in doing business with Perficient. (Id.) At the June lunch, Craft explained his new role at Clientek and Clientek's business of building custom applications; Hopkins informed Craft that Clientek already has partners for the services that Clientek offers but offered to introduce Craft to other individuals in the industry. (Id. ¶ 7, 10.) Shortly thereafter, Hopkins sent an email to Craft's old Perficient email address, stating, "Tom, thanks for lunch on Wednesday. I did get your new contact info and will talk with a few people next week . . . to see if we can make a connection. Was great catching up with you, sounds like you have a great opportunity in front of you with Clientek." (Compl. ¶ 70; id. Ex. G.).

Two days after the lunch, Craft learned from a former colleague at Perficient that Hopkins' email was sent to Craft's old email address, and that Perficient had submitted

3

another pitch to BeiGene. (Craft Decl. ¶ 12.) Craft immediately sent a LinkedIn message to Hopkins informing him that they could not discuss business due to Craft's agreements with Perficient, and Craft ceased all further communication with Hopkins. (Id. ¶ 12; id. Ex. B at 6.) Perficient did not receive any business from BeiGene. (Id. ¶ 73.)

This lawsuit followed. Perficient brings claims for breach of contract; misappropriation of confidential, proprietary, and trade secret information; breach of duty of loyalty; unjust enrichment; and for preliminary and permanent injunctive relief. For the purposes of this Motion, Perficient seeks to enforce Craft's non-solicitation, non-disclosure, and confidentiality obligations; Perficient is not pursuing any injunctive relief related to its allegations in the Complaint that Craft breached his obligations not to compete. (Pl.'s Mem. in Supp. (Docket No. 4) at 12.)

**DISCUSSION**

As an initial matter, the parties disagree as to the number of agreements at issue, the governing law as to one of the agreements, and whether that agreement is valid. Craft argues that the 2024 Stock Award is unenforceable, because it was entered into after Minn. Stat. § 181.988 took effect on July 1, 2023, preventing employees who primarily live and work in Minnesota from adjudicating disputes related to employment disputes for claims arising in Minnesota in another state. (Def.'s Mem. in Opp'n (Docket No. 15) at 15.) While Craft does not mention the Confidentiality Agreement in his memorandum, the Stock Awards contain essentially identical confidentiality obligations to those in that agreement. The Confidentiality Agreement is governed by Minnesota law. The parties ostensibly agree on the validity of the 2023 Stock Award, which is governed by Missouri

4

law. In any event, for the purposes of this Motion, the Court need not determine whether the 2024 Stock Award is valid or which state's laws govern because all three agreements contain substantially the same confidentiality and non-solicitation obligations. Moreover, neither party mentions any meaningful difference between the agreements' obligations or the laws of either Minnesota or Missouri, and the Court did not find any consequential difference in its own research.

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). When deciding whether to issue a preliminary injunction, courts consider four factors: (1) the threat of irreparable harm to the movant; (2) the balance of harm the injunction would have on the movant and the opposing party; (3) the probability that movant will succeed on the merits; and (4) the public interest. Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981). While no factor is dispositive, "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied." Barrett v. Claycomb, 705 F.3d 315, 320 (8th Cir. 2013).

Perficient argues that Craft should be temporarily enjoined from solicitation of its clients and prospective clients and be ordered to comply with the terms of the Agreements and not to use, disclose, or misappropriate any Perficient confidential, proprietary, or trade secret information.

5

A.    **Irreparable Harm**

"Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." Gen. Motors Corp. v. Harry Brown's, LLC, 563 F.3d 312, 319 (8th Cir. 2009). "[T]o demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (quoting Iowa Utils. Bd. v. Fed. Commc'ns Comm'n, 109 F.3d 418, 425 (8th Cir. 1996)). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003).

Perficient fails to submit evidence that Craft's actions caused irreparable harm. Perficient presents no evidence that Craft retained any Perficient confidential information, trade secrets, or other customer information after he left Perficient, and there is no evidence of threatened misappropriation or inevitable disclosure of any such information. Likewise, Perficient fails to provide evidence that Craft solicited a Prospective Customer for Prospective Products or Services or that he provided any Competitive Products or Services, in violation of his obligations to Perficient. Perficient fails to allege any monetary loss, merely explaining a hypothetical loss of BeiGene's business and potential loss of other business if Craft violates the non-solicitation provision in the future. Moreover, Perficient presents no evidence showing that Craft had any knowledge of Perficient pursuing BeiGene for additional business. "It is also well settled that economic loss does not, in and of itself, constitute irreparable harm . . ..

6

Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [plaintiff]'s business." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986). Perficient cites no evidence of any damage to customer goodwill, only providing conclusory allegations. See Novus Franchising, Inc. v. Dawson, 725 F.3d 885, 895 (8th Cir. 2013) (citation omitted); see also Midwest Sign & Screen Printing Supply Co. v. Dalpe, 386 F. Supp. 3d 1037, 1055-56 (D. Minn. 2019) (Tostrud, J.) (citation omitted).

Perficient argues that the Court can infer irreparable harm, but the threat of such harm is insufficient in federal court. While "inferring irreparable harm from the breach of a valid restrictive covenant is a *Minnesota* procedural doctrine developed and applied by *Minnesota* courts in deciding whether to grant injunctive relief under the *Minnesota* Rules of Civil Procedure," such is not the case under the Federal Rules and case law. Moeschler v. Honkamp Krueger Fin. Servs., Inc., Civ. No. 21-0416, 2021 WL 4273481, at *9 (D. Minn. Sept. 21, 2021) (Schiltz, J.) (emphasis in original) (citation omitted). "The Court will not use an injunction 'simply to eliminate a possibility of a remote future injury, or a future invasion of rights' or to allay [a former employer's] fears and anxieties about [its former employee] working for [a competitor]." Katch, LLC v. Sweetser, 143 F. Supp. 3d 854, 873 (D. Minn. 2015) (Nelson, J.) (quoting Int'l Bus. Mach. Corp. v. Seagate Tech., Inc., 941 F. Supp. 98, 101 (D. Minn. 1992)).

Perficient contends that, in any event, it need not show irreparable harm because Craft stipulated as much in the Confidentiality Agreement. (Compl. ¶ 38; id. Ex. A at 4.) This argument is unavailing because stipulations avowing irreparable harm neither bind a

7

federal court nor relieve a party of its duty to demonstrate "*actual* irreparable harm." Moeschler, 2021 WL 4273481, at *13 (emphasis in original).

Thus, the Court finds that Perficient has not demonstrated irreparable harm, and the Motion may be denied on that basis alone.

**C.     Likelihood of Success on the Merits**

To demonstrate a likelihood of success on the merits, Perficient must establish that it has a "fair chance of prevailing" on a claim. Planned Parenthood of Minn., N. Dak., S. Dak. v. Rounds, 530 F.3d 724, 732 (8th Cir. 2008) (en banc). This standard does not require "the party seeking relief [to] show 'a greater than fifty percent likelihood that [it] will prevail on the merits.'" Id. at 731 (quoting Dataphase, 640 F.2d at 113).

Perficient has not submitted sufficient evidence to show that it will likely prevail on its breach-of-contract claim under either Minnesota or Missouri law. Conclusory allegations about potential confidential information or trade secrets that Craft may have or could reveal in the future are insufficient to justify injunctive relief. Perficient likewise fails to describe anything more than a hypothetical breach of Craft's non-solicitation obligations. Indeed, as Craft contends, before seeking any information from Craft, Perficient constructed a federal lawsuit out of one lunch. Had Perficient contacted Craft, it would have learned that he, on his own volition, ceased all communications with Hopkins.

**B.     Balance of Harms and Public Interest**

Perficient has not demonstrated that the balance of harms or public interest weigh in favor of issuing an injunction. As described above, Perficient presents only

speculative harm that Craft would violate his non-disclosure, confidentiality, or non-solicitation obligations in the future. Craft, however, explains that he would be "effectively . . . thrown out of work" because Perficient's broad definition of "Prospective Client" includes organizations about which Craft had no knowledge while working at Perficient. (Def.'s Mem. in Opp'n at 20.) Perficient has not demonstrated that maintaining the status quo would harm it, while Craft would be harmed by the issuance of an injunction. Finally, the Court finds that the public interest weighs in favor of Craft earning a living in his chosen profession. Katch, 143 F. Supp. 3d at 876 ("[A] person's right to labor in any occupation in which he is fit to engage is a valuable right, [and] should not be taken from him, or limited, by injunction, except in a clear case showing the justice and necessity therefor."). The Court will not issue injunctive relief merely requiring that Craft abide by his contractual duties.

## CONCLUSION

Accordingly, **IT IS HEREBY ORDERED that** Plaintiff's Motion for a Preliminary Injunction (Docket No. 2) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:_____  _____
Paul A. Magnuson
United States District Court Judge